### STATE

v.

### Dennis R. EVANS.

No. 95–10–C.A.

Supreme Court of Rhode Island.

Jan. 11, 1996.

Jane McSoley and Aaron Weisman, Asst. Attys. General, Providence, for Plaintiff.

Richard K. Corley, Providence, for Defendant.

## OPINION

MURRAY, Justice.

Before this court is the appeal of Dennis R. Evans (defendant) from a Superior Court judgment of conviction. The decisive issues before us center on the question of whether the trial justice either should have excluded a state's witness, Darrell Lee Kroll (Kroll), from testifying, or should have granted the defendant a mistrial because of the state's failure to disclose fully to the defendant prior to trial not only Kroll's complete criminal record but also the promises made and rewards given to him by the government in exchange for his testimony. The alleged negligent disclosure by the state was revealed midtrial. The defendant alleges that such nondisclosure unfairly forced him to proceed with the trial with the result that he was denied the time and the resources that were necessary for him thoroughly to investigate the information disclosed in order to prepare a full and effective cross-examination of Kroll. For the reasons stated herein, we sustain the defendant's appeal and remand for a new trial. The facts as pertinent to the instant appeal follow.

On August 9, 1991, a lone gunman entered the Fleet National Bank (Fleet) located on Bald Hill Road in Warwick. Carrying a handgun in one hand and a shopping bag in the other, the gunman leaped over the counter and proceeded to order five tellers to fill the shopping bag with money. After the bag was filled, the gunman fled the bank and entered a car, which was later determined to

have been stolen earlier that day. The car was subsequently recovered a short distance from the bank. The defendant and Kroll immediately became suspects in the crime. One week later, Kroll was arrested on unrelated charges in Warren. Thereafter, when Warwick police detectives and a state prosecutor questioned Kroll concerning the Fleet bank robbery, Kroll admitted to having been a participant in the crime and identified defendant as the gunman. Kroll agreed to cooperate with the police in exchange for receiving a lenient sentence for his involvement in the Fleet bank robbery. He also provided the state with significant information concerning numerous unsolved crimes throughout the state.

On July 13, 1992, defendant was indicted on five counts of robbery and one count of conspiracy to commit robbery. Prior to trial, the state listed Kroll as a person it intended to call as a witness. In three separate pretrial motions made pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure, defendant requested the state to provide him with "all oral and/or written promises made to Daryl Kroll by members of the Warwick Police Department and/or the Department of the Attorney General." In response to each motion, the state indicated that "there has been no statements or promises, inducements, or rewards of any kind or nature made to any witness or witnesses that the state intends to rely upon." The defendant also requested the state to provide him with any exculpatory evidence in its possession. In response, the state submitted certain documents contained in its case file, including what turned out to be an incomplete criminal record for Kroll.

Trial commenced in the Kent County Superior Court on February 1, 1994. Prior to Kroll's testifying, the state argued a motion in limine to preclude defendant from impeaching Kroll by cross-examining him concerning certain criminal convictions contained in his criminal record, which had been provided by the state. In response to the state's argument, defense counsel told the court that it had come to his attention that Kroll's criminal history had not been completely disclosed by the state. Specifically

defense counsel indicated that he had independently uncovered information about four additional Providence indictments against Kroll that had not been contained within the state's response to his discovery requests. Moreover, defense counsel informed the court that the state had failed to disclose the terms of a deal it had made with Kroll. Pursuant to the deal, Kroll agreed that in exchange for his testimony against defendant in the instant case, he would receive a twenty-five-year sentence with only five years to serve and the remainder suspended for his involvement in the Fleet bank robbery. Kroll's sentence under the deal would run concurrently with any other sentence he received for a conviction arising from any other pending criminal information or indictment. On the basis of the state's failure fully to disclose Kroll's quite extensive criminal history, and on the basis of its failure to disclose the existence of the deal in compliance with Rule 16 of the Superior Court Rules of Criminal Procedure, defense counsel made a motion to prevent Kroll from testifying. An evidentiary hearing was thereafter conducted by the trial justice outside the presence of the jury for the purpose of determining the reason for the state's failure to comply with Rule 16. Three state prosecutors who had had involvement in the instant case prior to trial and/or had had contact with Kroll in other cases testified at the hearing wherein it was revealed, inter alia, that the state had in fact made a deal with Kroll and that the deal had never been memorialized in writing. This deal had not been revealed to defendant in the state's response to his several discovery requests. It was also disclosed that in addition to receiving a lenient sentence for his involvement in the Fleet bank robbery, the state had agreed to write to the parole board on Kroll's behalf and that the state had also offered to place Kroll in protective custody if he so requested; however, defendant was never advised of these facts. The state conceded that it had not provided defendant with Kroll's complete criminal history because some charges arose from secret indictments and were therefore not reflected in the Bureau of Criminal Identification (BCI) report it had provided to defendant. The state then provided defense counsel with

a complete BCI record for Kroll, which verified that there were in fact four additional indictments against Kroll as well as federal charges of which defendant had not been advised.

Following arguments by counsel on defendant's motion to exclude Kroll's testimony, the trial justice ruled that the state had failed to exercise due diligence and was negligent in responding to defense counsel's discovery requests. However, she found that there was a lack of prejudice to defendant "because it was the defense that brought most of these materials to light." Absent proof of deliberate nondisclosure, the trial justice found it unnecessary to exclude Kroll as a witness.

Next, defense counsel moved for a mistrial on the basis of newly disclosed information concerning criminal activity revealed by Kroll which was contained in the notes of the state prosecutor who had negotiated the deal with Kroll. The notes were turned over to defense counsel voluntarily by the state. Defense counsel argued that the new information contained in the notes warranted extensive investigation and that a continuance would be impractical. Defense counsel specifically indicated that he desired to research the accuracy of Kroll's information contained in the notes in order to determine whether Kroll had been truthful with the government in negotiating the deal. The state objected to a mistrial, arguing that the information which was revealed to defense counsel would not be admissible at trial under the Rhode Island Rules of Evidence. The trial justice, agreeing with the state, opined that the extreme remedy of a mistrial was unwarranted. The trial justice then inquired whether defense counsel was prepared to go forward with Kroll's testimony or if he needed a continuance within the framework of the pending trial in order to investigate the information contained in the prosecutor's notes. Defense counsel advised the court that defendant had advised him not to seek a continuance and that he would therefore go forward with Kroll's testimony.

Kroll thereafter testified and was the sole witness implicating defendant in the robbery. The jury returned a guilty verdict on the conspiracy charge and acquitted defendant on all counts of robbery. He was sentenced to serve ten years to run concurrently with a sentence he was already serving.

On appeal defendant argues that the trial justice erred in refusing to grant his motions to exclude Kroll's testimony and to declare a mistrial on the basis of the state's failure to comply with the dictates of Rule 16. The state avers that there was no error in the court's refusal to preclude Kroll's testimony and that the trial court's refusal to grant a mistrial was proper. We are of the opinion that the trial justice abused her discretion in denying the motion for a mistrial after having decided to admit Kroll's testimony and therefore remand the case to the Superior Court for a new trial.

Rule 16 governs the scope of the state's duty to produce evidence, and we have in the past described it as among the most liberal discovery mechanisms in the United States. *State v. Squillante*, 622 A.2d 474, 478 (R.I.1993) (citing *State v. Coelho*, 454 A.2d 241 (R.I.1982)). The rule is intended to ensure that every defendant has ample and sufficient opportunity to establish the best and fullest defense available to him or her. *State v. Scurry*, 636 A.2d 719, 725 (R.I.1994). "Accordingly, we have consistently condemned the untimely disclosure of extensive discovery material just prior to trial or in the midst of trial." *Id.; State v. Simpson*, 595 A.2d 803, 806–07 (R.I.1991); *State v. Darcy*, 442 A.2d 900, 903 (R.I.1982). Not only does untimely disclosure make the task of defense counsel difficult, it also reduces counsel's effectiveness by forcing changes in defense strategy midtrial. *Scurry*, 636 A.2d at 725.

We have held that the trial justice is in the best position to evaluate whether any prejudice has resulted from noncompliance with discovery motions. *State v. Coelho*, 454 A.2d 241, 244–45 (R.I.1982). That determination should not be disturbed absent clear abuse of discretion. *Id.* at 245. When reviewing a Rule 16 violation, the trial justice should consider "(1) the reason for the nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4)

any other relevant factors." *State v. Brown,* 528 A.2d 1098, 1102 (R.I.1987) (quoting *Coelho,* 454 A.2d at 245).

Analyzing this case under the *Coelho* test, we determine that defendant did suffer prejudice. In the instant case the reason for the state's nondisclosure was negligence. The negligent disclosure fell within two areas: Kroll's criminal record and the deal the state made with Kroll. From the record before us it is apparent that the midtrial disclosure of Kroll's criminal record, as well as the details concerning the deal the state had made with him, denied defense counsel the opportunity to marshal the information in an orderly fashion. Kroll was the only witness offered by the state who implicated defendant in the robbery, and therefore, impeaching him before the jury was crucial to defendant's case. Thus, viewing the record in its totality under the *Coelho* test, we find that defendant suffered prejudice as a result of the state's failure to comply with discovery. Because the information revealed at midtrial was highly significant and required defense counsel's extensive investigation, we are of the opinion that a continuance was insufficient in order for defense counsel to adjust to this new material. Therefore, we are of the opinion that the trial justice erred in refusing to grant defendant's motion for a mistrial. A continuance within the framework of a pending trial would have been insufficient.

We note that defendant does not question, nor do we, the trial prosecutor's representation that she was unaware of the undisclosed indictments against Kroll until the midst of trial. Moreover, we are satisfied that the state failed to inform defendant about the deal it made with Kroll because the deal had never been memorialized in writing by the prosecutor who had negotiated it, leaving the trial prosecutor in the dark. This case demonstrates the unfortunate consequences of a lack of communication among attorneys in the same office. Indeed, the trial prosecutor candidly admitted that in regard to this case "one hand did not know what the other was doing." Like the trial justice, we believe the state's failure to comply with Rule 16 in the instant case was negligent, albeit unintentional. However, we are of the opinion that the state's negligence is unacceptable and cannot be countenanced. The state may not haphazardly discharge its duty to respond to discovery requests and then appear at trial and expect a defendant to pay the price of its negligence by going forward without sufficient time to prepare his or her defense effectively in view of the newly revealed discovery material.

We are of the opinion that the state's negligent disclosure denied the defendant the opportunity to present his fullest and best defense. Due-process considerations, as well as the interests of justice, require granting the defendant a new trial.

Accordingly, for the reasons stated herein, the defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial.

BOURCIER, J., not participating.