**Supreme Court**

No. 2013-294-M.P.
(K2/08-644A)


State                                   :

    v.                                  :

Wilson Rodriguez.                       :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|   |   |
|---|---|
| State | : |
| v. | : |
| Wilson Rodriguez. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on writ of certiorari on January 22, 2015, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.[1] The defendant, Wilson Rodriguez (defendant or Rodriguez), appeals from a judgment of conviction after a jury verdict finding him guilty of one count of delivery of a controlled substance, to wit cocaine. After the trial justice heard, and denied, the defendant's motion for a new trial, he sentenced the defendant to five years at the Adult Correctional Institutions, with one year to serve and four years suspended with probation. Before this Court, the defendant raises a bevy of issues, all of which lack merit. The defendant argues that the trial justice erred in: (1) his denial of the defendant's motion in limine to bar the testimony of Detectives Louis Stravato (Det. Stravato) and Anthony Hampton (Det. Hampton); (2) his charge to the jury; (3) his failure to include certain portions of testimony during a read back to the jury; (4) his denial of the defendant's motion for judgment of acquittal; and (5) his denial of the defendant's motion for a new trial.

---

[1] The defendant filed a petition for certiorari after his appeal was dismissed by the Superior Court for failure to properly perfect his appeal.

After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time. We affirm the judgment of conviction.

**Facts and Travel**

On February 26, 2008, Providence Police Detectives Stravato and Hampton were investigating defendant for possible narcotics violations. Detective Stravato testified that they set up a surveillance because they "had information that [defendant] was * * * a narcotics dealer, specifically crack cocaine." The detectives observed defendant exiting a home on Barry Road in Providence with an elderly gentleman—later determined to be defendant's father—and drive off in a white Acura. The detectives proceeded to follow defendant.

Eventually, after passing through portions of Cranston and Warwick, the surveillance led the detectives to the parking lot of the Rhode Island Mall in Warwick. The detectives parked thirty to forty feet away from defendant's vehicle and saw another vehicle park next to defendant's vehicle; both vehicles were facing in the same direction. Detective Stravato then saw the passenger of the second vehicle—later identified as Pamela Sherman (Sherman)—throw "crumbled currency, crumbled in a ball" into defendant's car and then defendant threw what appeared to be cocaine into the car occupied by Sherman. The two cars then exited the parking lot, and the detectives followed the car in which Sherman was a passenger because, according to Det. Stravato, they had already "identified [defendant] so we weren't concerned about, you know, particularly apprehending him at that point."

The Providence police detectives stopped the Sherman vehicle after it had entered West Warwick. Detective Hampton removed Sherman from the car and asked her about drugs in her vehicle. Sherman admitted that the drugs were in a pack of cigarettes inside the vehicle. The

pack of cigarettes contained a bag of suspected crack cocaine. It was seized and turned over to Detective Sergeant Lavigne of the West Warwick Police Department. Sherman was arrested by the West Warwick Police and charged with drug possession. The suspected narcotics were field-tested at the West Warwick police headquarters and tested positive for cocaine.[2] Eventually, on March 11, 2008, defendant was arrested by the Providence police on the basis of a Warwick Police Department arrest warrant with an affidavit signed by a member of the Providence Police Department and was later transferred to the custody of the Warwick Police Department.

In a pretrial ruling, the trial justice denied defendant's motion in limine to preclude trial testimony of Detectives Stravato and Hampton on the grounds that the Providence police lacked jurisdictional authority to conduct a surveillance outside of Providence's city limits without informing the local police departments, and that the Providence police had no authority to seize suspected narcotics from Sherman. The trial justice rejected defendant's argument, observing that the detectives did not arrest defendant outside of Providence, but merely conducted surveillance of defendant. Furthermore, the trial justice noted that there was no authority that suggested that the detectives' actions were in violation of state law.

The case was reached for trial on January 4, 2010. The state called several witnesses in support of its case, including Det. Stravato, Det. Hampton, and Sherman. The state rested on January 5, 2010; and the next day, defendant moved for judgment of acquittal. The trial justice denied the motion, concluding that the state had submitted evidence supporting all of the elements of the charged offense. The defense rested without presenting any evidence. After the trial justice instructed the jury, defendant raised a number of objections to the jury charge, all of which were denied by the trial justice.

---

[2] The state crime laboratory later confirmed that the substance in the plastic bag was cocaine.

During its deliberations on the afternoon of January 6, 2010, the jury submitted the following question to the trial justice: "What body parts did the following witnesses say they saw coming from the defendant's car?" The question listed Det. Stravato, Det. Hampton, and Sherman as the pertinent witnesses about whom the jury inquired. The trial adjourned for the day to enable the stenographer to find the responsive testimony.

The next day, the trial justice read back the following two excerpts from the testimony of Det. Stravato: (1) Q: "Now, did you see any part of his body perform that action, is what I'm asking?" A: "Yes, his left hand." and (2) Q: "Okay. Can you tell us what you observed next?" A: "I observed Mr. Rodriguez's hand, um, come through his window of his vehicle and toss into her vehicle a, um, small bag of suspected crack cocaine." However, the trial justice refused defendant's request to read a portion of Det. Stravato's cross-examination testimony in which he testified that he did not see defendant's hand outside of his car at a particular point in time. The trial justice determined "that the request of the jury is specifically as to body parts coming from the defendant's car." Therefore, the trial justice concluded that the read back requested by defendant was "not in the positive. It's not something coming from the car. He said he didn't see anything coming from the car at that time." Thus, the trial justice declined to read back that portion of Det. Stravato's testimony as it was not responsive to the jury's question. Later that day, the jury returned a verdict of guilty on the charge of delivery of a controlled substance.

The defendant filed a motion for a new trial, arguing that the verdict was against the weight of the evidence and also that the trial justice had committed an error of law when he refused to read back the requested portion of Det. Stravato's testimony to the jury. The trial justice denied both bases of defendant's motion. The defendant was later sentenced to five years, with one year to serve and four years suspended with probation.

- 4 -

## Motion **in** **Limine**

This Court "review[s] the grant or denial of a motion in limine for an abuse of discretion." State v. Marte, 92 A.3d 148, 150 (R.I. 2014) (quoting Fravala v. City of Cranston ex rel. Baron, 996 A.2d 696, 702 (R.I. 2010)). "When reviewing the grant or denial of a motion in limine, this Court will consider only whether the challenged evidence was proper and admissible and, if not, whether there was sufficient prejudice to constitute reversible error." State v. Scanlon, 982 A.2d 1268, 1274 (R.I. 2009) (quoting State v. Gomes, 881 A.2d 97, 111 (R.I. 2005)).

The defendant asserts that the trial justice erred in denying his motion in limine seeking to exclude the testimony of Providence Detectives Stravato and Hampton because they were outside of their jurisdiction when they observed the alleged criminal conduct in Warwick. The defendant argues that G.L. 1956 § 12-7-19 and G.L. 1956 § 45-42-1 impose an obligation upon police to contact local authorities from the cities and towns when making an arrest outside their jurisdiction. By extension, defendant contends that the same obligation applied to Detectives Stravato and Hampton during their surveillance. Thus, defendant asserts that the surveillance was illegal and the testimony derived therefrom should have been excluded.

This argument ignores our recent holding in State v. Morris, 92 A.3d 920, 926 (R.I. 2014), where we stated "that the Pawtucket police could properly travel outside of their jurisdiction without the accompaniment of Providence police in the course of investigating the robberies." As Detectives Stravato and Hampton were merely conducting surveillance of defendant—that began in Providence—and they did not arrest him at that time, the detectives

were not required to contact the authorities of the cities and towns through which they traveled. See id.

Furthermore, the detectives did not follow defendant out of the parking lot, but rather pursued Sherman. Thus, even if Sherman had been arrested outside of the detectives' jurisdiction, defendant has no standing to challenge her arrest because the Fourth Amendment is a personal right and defendant would have no expectation of privacy in the search that was conducted. See State v. Quinlan, 921 A.2d 96, 109 (R.I. 2007) ("A party has standing when he or she is found to have a reasonable expectation of privacy in the area searched or the thing seized." citing State v. Casas, 900 A.2d 1120, 1129-31 (R.I. 2006)); see State v. Bertram, 591 A.2d 14, 19 (R.I. 1991) (concluding that passenger of a vehicle rented by the passenger's spouse had no standing to challenge the search of the vehicle).

## Jury Instructions

"[T]he standard of review for jury instructions is well settled. A charge 'need only adequately cover[ ] the law.'" State v. Long, 61 A.3d 439, 445 (R.I. 2013) (quoting State v. Cardona, 969 A.2d 667, 674 (R.I. 2009)). "When we are called upon to review 'issues pertaining to jury instructions, we do so de novo.'" State v. Pona, 66 A.3d 454, 470 (R.I. 2013) (quoting State v. Vargas, 991 A.2d 1056, 1060 (R.I. 2010)). "[W]e examine the challenged portion in the context in which it was delivered to ascertain how a jury composed of ordinary, intelligent lay people would have understood the instructions." State v. Sivo, 809 A.2d 481, 488 (R.I. 2002). "A 'trial justice is bound to ensure that the jury charge sufficiently addresses the requested instructions and correctly states the applicable law.'" Long, 61 A.3d at 445 (quoting State v. Sivo, 925 A.2d 901, 913 (R.I. 2007)).

The defendant argues that the trial justice erred when he overruled defendant's objection to the jury instructions focused on what he contends was insufficient instruction and use of the phrase "beyond a reasonable doubt" in various portions of the jury charge. We note at the outset that defendant failed to specifically identify the portions of the jury instructions that he is contesting on appeal. The defendant's argument contesting the jury charge has not been sufficiently developed for this Court to review. See State v. Day, 925 A.2d 962, 974 n.19 (R.I. 2007). Nonetheless, from our review of the trial transcript, it is abundantly clear that the instructions provided by the trial justice properly instructed the jurors on the applicable law and the state's burden of proof. It was not necessary that the term "beyond a reasonable doubt" be repeated throughout the instructions, but rather, that the meaning of "beyond a reasonable doubt" must adequately be conveyed to the jury. See State v. Imbruglia, 913 A.2d 1022, 1030, 1033 (R.I. 2007) (holding that the trial justice is "not obligated to use the specific words requested by [the] defendant" so long as the trial justice "adequately cover[s] the law"). The instructions in this case satisfied this requirement.

### The Testimony Read Back to the Jury

"The decision whether to read back to the jury a particular witness's trial testimony—in response to a jury request—'is committed to the sound discretion of the trial justice.'" State v. Ros, 973 A.2d 1148, 1176 (R.I. 2009) (quoting State v. Dumas, 835 A.2d 438, 443 (R.I. 2003)). "The trial justice generally should honor such a request, 'especially when it is practically possible to do so without consuming an inordinate amount of time and without misleading the jury.'" Id. (quoting Dumas, 835 A.2d at 443). Furthermore, a read back must be both fair and impartial; thus, "it should include all testimony pertaining to the subject matter of the jury request." Id. (citing Dumas, 835 A.2d at 444).

The defendant contends that the trial justice erred when, in response to the question posed by the jury, he did not read back the following excerpt: Q: "Was Mr. Rodriguez's, I assume, left hand outside the window?" A: "Not at that point." The trial justice determined that this excerpt was not within the purview of the question posed by the jury because it did not relate to what parts of defendant's body the witnesses "saw coming from the defendant's car[.]"

We discern no abuse of discretion on the part of the trial justice in excluding the challenged portion of Det. Stravato's testimony. While the testimony implies that Det. Stravato saw defendant's hand at some other point, it was not responsive to the question that was posed by the jury. It is well settled that "[t]he trial justice has considerable discretion in how to respond to a request." Ros, 973 A.2d at 1176. Here, the trial justice determined that the challenged testimony was not responsive, particularly in light of the fact that the question called for an answer as to when defendant's body parts were coming from the vehicle, and the challenged testimony related to a point when defendant's hand was not observed outside the vehicle. We previously have stated that "[w]hen a jury makes a request for information, the response should be tailored to the request." Id. We are satisfied that the response provided by the trial justice was appropriately tailored to the request of the jury, and it was within his sound discretion to decline to read back the portion requested by defendant.

**Motion for a New Trial and Judgment of Acquittal**

"When ruling on a motion for a new trial, the trial justice acts as a thirteenth juror, exercising 'independent judgment on the credibility of witnesses and on the weight of the evidence.'" State v. Heredia, 10 A.3d 443, 446 (R.I. 2010) (quoting Imbruglia, 913 A.2d at 1028). "Specifically, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then

- 8 -

(3) determine whether he or she would have reached a result different from that reached by the jury.'" Id. (citing State v. Texieira, 944 A.2d 132, 140 (R.I. 2008)). "If, after conducting such a review, the trial justice reaches the same conclusion as the jury, the verdict should be affirmed and the motion for a new trial denied." Id. (citing State v. Snow, 670 A.2d 239, 244 (R.I. 1996)).

"When passing on 'a trial justice's denial of a motion for judgment of acquittal, this Court applies the same standard as the trial justice.'" Long, 61 A.3d at 445 (quoting State v. Lynch, 19 A.3d 51, 56 (R.I. 2011)). "A motion for a judgment of acquittal should be granted only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt." Id. (quoting Heredia, 10 A.3d at 446). "If, however, a reasonable juror could find the defendant guilty beyond a reasonable doubt, the motion should be denied." Id. (quoting Heredia, 10 A.3d at 446).

The defendant argues that the trial justice erred in denying his motion for a new trial because of the alleged lack of credibility of the detectives and because of the failure of the trial justice to read back the requested portion of Det. Stravato's testimony. The defendant contends that the detectives' credibility was first called into question because they knowingly allowed defendant to drive even though they had probable cause to arrest him for operating the vehicle without a valid license. Additionally, defendant asserts that there were inconsistencies between the testimony of the detectives as to where in the parking lot the delivery took place.

Although the trial justice acknowledged the minor inconsistencies between the testimony of Detectives Stravato and Hampton, he also found that, to the extent the testimony was inconsistent, Sherman's testimony established that she purchased cocaine from defendant at that location. The trial justice declared that he agreed with the verdict and his decision was not influenced by the inconsistencies:

> "There was nothing so shattering that was entered into evidence to detract or limit the credibility from either Stravato or from Hampton. When the [c]ourt looks at the total credibility of all those witnesses, Hampton, Stravato, and Sherman, the [c]ourt does not fault the jury's verdict in this particular matter."

Additionally, the trial justice reiterated that the only portions of the testimony that were read back to the jury were the portions that responded to the question posed. He concluded that it was not error to decline to read back the portion requested by defendant.

We are of the opinion that the trial justice did not err in denying defendant's motion for a new trial. The trial justice properly considered the weight of the evidence and the credibility of the witnesses, and he "articulated adequate reasons for denying the motion[.]" State v. Fleck, 81 A.3d 1129, 1134 (R.I. 2014) (quoting State v. Phannavong, 21 A.3d 321, 325 (R.I. 2011)). The trial justice was not clearly wrong, and we see no reason for disturbing his decision. See id. at 1135.

Lastly, because we have "concluded that the evidence 'was sufficient to withstand the more stringent review applicable to a motion for a new trial, it follows that the evidence was also sufficient to withstand a motion for a judgment of acquittal.'" State v. Pineda, 13 A.3d 623, 642 (R.I. 2011) (quoting State v. Hesford, 900 A.2d 1194, 1200 (R.I. 2006)). Therefore, we decline to disturb the trial justice's decision with respect to his denial of the defendant's motion for judgment of acquittal.

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of conviction. The papers in this case shall be remanded to the Superior Court with our decision endorsed thereon.

- 10 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          State v. Wilson Rodriguez.

**CASE NO:**          No. 2013-294-M.P.
                            (K2/08-644A)

**COURT:**          Supreme Court

**DATE OPINION FILED:**   March 9, 2015

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**     Kent County Superior Court

**JUDGE FROM LOWER COURT**:

                            Associate Justice Edward C. Clifton

**ATTORNEYS ON APPEAL:**

                            For State:  Virginia M. McGinn
                                           Department of Attorney General

                            For Defendant:  Martin D. Harris, Esq.